# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

CHAZ BUNCH

Petitioner, : Case No. 2:26-cv-276

- vs -

District Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

MIKE MARINICH, WARDEN,
Lebanon Correctional Institution,

:

Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner Chaz Bunch brought this habeas corpus action pursuant to 28 U.S.C. § 2254 with the assistance of counsel to challenge his 2002 conviction in the Mahoning County Common Pleas Court for aggravated robbery, three counts of rape, three counts of complicity to commit rape, one count of kidnapping, one count of conspiracy to commit aggravated robbery, and one count of aggravated menacing. The case is ripe for a report and recommendations from the undersigned on the Petition (ECF No. 1), the State Court Record (ECF No. 8), the Return of Writ (ECF No. 9), and Petitioner's Traverse (ECF No. 16).

**Litigation History**

On November 8, 2001, the Mahoning County Grand Jury returned an indictment charging

Bunch with three counts of aggravated robbery in violation of Ohio Revised Code §2911.01(A)(1)(C), three counts of rape in violation of Ohio Revised Code §2907.02(A)(2)(B), three counts of complicity to rape in violation of Ohio Revised Code §§2923.03(A)(2)(F) and 2907.02(A)(2)(B), one count of kidnapping in violation of Ohio Revised Code §2905.01(A)(4)(C), one count of conspiracy to commit aggravated robbery in violation of Ohio Revised Code §§2923.01(A)(1) and 2911.01(A)(1)(C), and one count of aggravated menacing in violation of Ohio Revised Code §2903.21(A)(B). Firearm specifications were attached to all counts, except for the aggravated menacing misdemeanor count. (Indictment, State Court Record, ECF No. 8, Ex. 1).

The trial jury convicted Bunch of one count of aggravated robbery, three counts of rape, three counts of complicity to rape, kidnapping, conspiracy to aggravated robbery, aggravated menacing, and the attached firearm specifications. The trial court sentenced Bunch to maximum, consecutive sentences on all charges except for the misdemeanor menacing verdict, which was ordered to be served concurrently, totaling eighty-eight years for the felony convictions and twenty-seven years for the firearm specifications, for a total of one hundred and fifteen years in prison.

Bunch appealed to the Ohio Seventh District Court of Appeals, pleading five assignments of error but not including any claim of ineffective assistance of trial counsel (Appellant Brief, State Court Record, ECF No. 8, Ex. 7, PageID 127). The Seventh District affirmed in part, reversed in part, and remanded for resentencing. *State v. Bunch,* 2005-Ohio-3309 (Ohio App. 7th Dist. Jun. 24, 2005). On appeal the Ohio Supreme Court eventually reversed and remanded for resentencing in accordance with *State v. Foster,* 109 Ohio St.3d 1 (2006).

On remand, Bunch was sentenced to eighty-nine years in prison (Entry, State Court Record,

ECF No. 8, Ex. 17). Bunch again appealed to the Seventh District Court of Appeals raising three assignments of error, none of which involved ineffective assistance of trial counsel (Appellant's Brief, State Court Record ECF No. 8, Ex. 19, PageID 517). The Seventh District affirmed and Bunch again appealed to the Ohio Supreme Court, including a claim of ineffective assistance of trial counsel for failure to raise a claim under *Blakely v. Washington*, 542 U.S. 296 (2004). The Supreme Court declined to exercise jurisdiction (Entry, State Court Record. ECF No. 8, Ex. 28).

Bunch filed an Application to Reopen his direct appeal under Ohio R. App. P. 26(B). None of the omitted assignments of error included a claim of ineffective assistance of trial counsel (Application, State Court Record, ECF No. 8, Ex. 33). The Seventh District denied relief and Bunch did not appeal.

On April 20, 2009, Bunch filed a Petition for Writ of Habeas Corpus in the United States District Court for the Northern District of Ohio (Petition, State Court Record, ECF No. 8, Ex. 36). Judge Dan Polster of that Court dismissed the Petition, the Sixth Circuit affirmed. *Bunch v. Smith,* 685 F.3d 546 (6th Cir. 2012), and the Supreme Court of the United States denied certiorari *sub. nom Bunch v. Bobby*, 569 U.S. 947 (2013)[1].

Bunch filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 on June 12, 2003 (Petition, State Court Record, ECF No. 8, Ex. 44). That petition remained unadjudicated when, on February 22, 2017, Bunch, through counsel, filed a first amended post-

---

[1] Respondent correctly concedes that the instant Petition is not second or successive under 28 U.S.C. § 2244(b). Return, ECF No. 9, PageID 5092, citing *Magwood v. Patterson*, 561 U.S. 320 (2010), and *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015). Because of this concession, this Court's subject matter jurisdiction is not in question.

conviction petition. In his petition, he raised the following three grounds:

> 1. Pursuant to *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), and *State v. Moore*, Slip. Op. 2016-Ohio-8288, which apply retroactively, a sentence that does not give a reasonable opportunity for release for a non-homicide offense committed by a child violates the Eighth and Fourteenth Amendments to the United States Constitution.
>
> 2. Pursuant to *Aalim*, Slip Op. No. 2016-Ohio-8278, which applies retroactively, Article 1, Section 16 of the Ohio Constitution, prohibits the State from transferring a child to adult court without an amenability hearing.
>
> 3. The eyewitness identification in this case was critical to the State's case because other than that identification, the State's case relied primarily on testimony from codefendants who received very favorable plea agreements in return for their cooperation. *See, State v. Bunch,* 7th Dist. Mahoning No. 14 MA 168, 2015-Ohio-4151, ¶ 46, in which the court of appeals noted that:
>
> > The state argued that a DNA exclusion would not be outcome determinative. The state emphasized that eyewitness and co-defendant testimony identified Appellant as one of the perpetrators and DNA was not used to identify Appellant. The state claimed, "The identity of the defendant was not at issued considering all of the eye-witness testimony."

Amended Petition, ECF No. 8, Ex. 45, PageID 1006. The trial court sustained the first ground for relief and held Bunch was entitled to resentencing. Bunch again appealed to the Seventh District which affirmed. As his First Assignment of Error on appeal, Bunch argued the trial court had erred by failing to hold an evidentiary hearing even though the Amended Petition was supported by an expert witness on eyewitness identification. The Seventh District decided that assignment of error as follows:

**First Assignment of Error**

"The trial court erred by dismissing Chaz Bunch's petition without an evidentiary hearing even though the petition was supported by the affidavit of an eye witness identification expert demonstrating that the identification in this case was unreliable."

**{¶ 20}** This assignment of error is based on the victim's identification of Appellant. During the photographic lineup, the victim was able to positively identify Bundy, Moore, and Callier. However, she did not positively identify Appellant. She indicated she was drawn to the photograph of him being the second gunman, but she wanted to see a full body picture before signing the photograph. The police were unable to put together a full body array because they were unable to find juveniles of that build. However, within two weeks of seeing the line-up, she saw a local newspaper, which showed a picture of Appellant from mid-chest up. Upon seeing this picture, she immediately knew Appellant was the second gunman and called her victim-witness advocate to inform her of this information.

**{¶ 21}** At trial, during cross-examination of the victim, the reliability of her identification was brought into question. However, trial counsel did not present an expert concerning the reliability of the victim's identification of Appellant.

**{¶ 22}** In his postconviction relief petition, Appellant argued trial counsel's failure to call an expert on the reliability of the victim's identification constituted ineffective assistance of counsel. Attached to the petition for postconviction relief was an expert opinion on witness identification reliability and this report called into question the reliability of the identification.

**{¶23}** To prevail on a claim of ineffective assistance of counsel, a postconviction petitioner must demonstrate that counsel's (1) performance fell below an objective standard of reasonableness, and (2) deficient performance prejudiced him. *See* Case No. 18 MA 0022 *Strickland v. Washington,* 466 U.S. 668,694, 104 S.Ct. 2052 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). When reviewing counsel's performance, this court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland* at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.*

> **{¶24}** Here, trial counsel choose [sic] to use cross-examination to question the reliability of the victim's identification of Appellant. The decision between relying on an expert and cross-examination is trial strategy. *State v. Foust,* 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, **1J** 97-99 (trial counsel's failure to request funds for a DNA expert, an alcohol and substance-abuse expert, a fingerprint expert, and an arson expert did not amount to ineffective assistance of counsel because appellant's need for experts was "highly speculative" and counsel's choice "to rely on cross-examination" of prosecution's expert was a "legitimate tactical decision"). Debatable trial tactics do not establish ineffective assistance of counsel. *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, 1J 45. Furthermore, the failure to call an expert and instead rely on cross-examination has been found by the Ohio Supreme Court to not constitute ineffective assistance of counsel. *State v. Nicholas,* 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993). *See also State v. Thompson,* 33 Ohio St.3d 1, 9, 514 N.E.2d 407 (1987) (trial counsel's failure to obtain a forensic pathologist to "rebut" the issue of rape was not ineffective assistance of counsel); *Foust,* 105 Ohio St.3d 137 at 1J 97-99. *See also State v. Yarger,* 6th Dist. No. H-97-014, 1998 WL 230648 (May 1, 1998) (trial counsel's failure to hire an expert medical doctor to rebut state's expert witness was not ineffective assistance of trial counsel); *State v. Rutter,* 4th Dist. No. 02CA 17, 2003-Ohio-373, **1J** 19, 28 (trial counsel's failure to hire an accident reconstructionist did not amount to ineffective assistance of counsel).
>
> **{¶25}** Furthermore, Callier testified Appellant and Moore raped the victim; he identified Appellant as the fourth assailant. Therefore, the victim's identification of Appellant was not the only identification.
>
> **{¶26}** Consequently, for those reasons the trial court did not abuse its discretion in finding the claim that trial counsel was ineffective for failing to call an expert witness on unreliable identifications was meritless. This assignment of error lacks merits.

*State v. Bunch*, 2021-Ohio-1244 (Ohio App. 7th Dist. Mar. 22, 2021). The Ohio Supreme Court reversed and remanded for an evidentiary hearing on the ineffective assistance of trial counsel claim. *State v. Bunch,* 171 Ohio St.3d 775 (2022).

After holding the required hearing, the trial court again found that Bunch did not receive ineffective assistance of trial counsel (Entry, State Court Record, ECF No. 8, Ex. 94). The Seventh

District affirmed. *State v. Bunch*, 2024-Ohio-5085 (Ohio App. 7th Dist. Oct. 22, 2024). Bunch raised ineffective assistance of trial counsel as his sole assignment of error on appeal and the Seventh District decided it as follows:

> {¶26} In his sole assignment of error, Appellant argues the trial court abused its discretion in denying his petition for post-conviction relief following a hearing and asserts his trial counsel rendered ineffective assistance.
>
> {¶27} Abuse of discretion is the proper standard for reviewing a trial court's ruling on a petition for post-conviction relief. ***State*** *v. Chapman*, 2020-Ohio-5589, ¶ 5 (7th Dist.), citing ***State*** *v. Gondor*, 2006-Ohio-6679, ¶ 58. An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.
>
>> Post-conviction relief is a collateral civil attack on a criminal judgment. ***State*** *v. Steffen*, 70 Ohio St.3d 399, 410, 1994-Ohio-111, 639 N.E.2d 67. R.C. 2953.21 through R.C. 2953.23 govern petitions for post-conviction and provide that "any defendant who has been convicted of a criminal offense and who claims to have experienced a denial or infringement of his or her constitutional rights may petition the trial court to vacate or set aside the judgment and sentence." ***State*** *v. Martin*, 7th Dist. No. 12 MA 167, 2013-Ohio-2881, ¶ 13.
>
> *Chapman*, 2020-Ohio-5589, at ¶ 5 (7th Dist.).
>
> {¶28} Appellant claims his trial counsel was constitutionally ineffective in not employing an eyewitness identification expert.
>
> {¶29} "(T)he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052 (1984). In order to demonstrate ineffective assistance of counsel, Appellant must show that trial counsel's performance fell below an objective standard of reasonable representation, and prejudice arose from the deficient performance. ***State*** *v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland* (, *supra*). Both prongs must be established: If counsel's performance was not deficient, then there is no need to review for prejudice. Likewise, without

prejudice, counsel's performance need not be considered. ***State*** *v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

> In Ohio, a licensed attorney is presumed to be competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's performance, appellate review is highly deferential as there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. Appellate courts are not permitted to second-guess the strategic decisions of trial counsel. ***State*** *v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).
>
> Even instances of debatable strategy very rarely constitute ineffective assistance of counsel. *See* ***State*** *v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987). The United States Supreme Court has recognized that there are "countless ways to provide effective assistance in any given case." *Bradley* at 142, citing *Strickland* at 689.
>
> To show prejudice, a defendant must prove his lawyer's deficient performance was so serious that there is a reasonable probability the result of the proceeding would have been different. *Carter* at 558. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d 136 at fn. 1, 538 N.E.2d 373, quoting *Strickland* at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair as a result of the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).
>
> [A]n ineffective assistance of counsel claim cannot be predicated upon supposition. ***State*** *v. Watkins*, 7th Dist. Jefferson No. 07 JE 54, 2008-Ohio-6634, ¶ 15. Likewise, proof of ineffective assistance of counsel requires more than vague speculations of prejudice. *Id.* ¶ 55, citing ***State*** *v. Otte*, 74 Ohio St.3d 555, 565, 1996-Ohio-108, 660 N.E.2d 7116.

***State*** *v. Rivers*, 2019-Ohio-2375, ¶ 20-23, 27 (7th Dist.).

> We thus refrain from second-guessing most of counsel's decisions on what questions to ask and what arguments to make. See *State v. Goodwin* (Sept. 24, 2001), 7th Dist. No. 99CA220, citing *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965. A defendant is not guaranteed the right to the best counsel who presents a flawless trial performance. *Id.,* citing ***State*** *v. Burley* (Aug. 11, 1998), 7th Dist. No. 93CA204. Tactical omissions or debatable trial tactics are generally deemed matters of trial strategy rather than error. ***State*** *v. Clayton* (1980), 62 Ohio St.2d 45, 47, 402 N.E.2d 1189.

*State v. Baker*, 2003-Ohio-7008, ¶ 12 (7th Dist.).

{¶30} Regarding eyewitness identification, "[g]enerally, the decision not to call an expert witness does not constitute ineffective assistance of counsel because that decision is solely a matter of trial strategy." *State v. Tobert*, 2003-Ohio-675, ¶ 19 (1st Dist.), citing *State v. Coleman*, 45 Ohio St.3d 298, 307-308 (1989).

{¶31} The trial court was well within its discretion to deny Appellant's post-conviction petition as Appellant failed to show that his trial counsel's performance was deficient and further failed to show that he was prejudiced by counsel's decision not to employ an eyewitness identification expert. DiMartino's considered choice not to employ an eyewitness identification expert did not make his performance deficient under both prongs of *Strickland.*

{¶32} There exists no precedent that requires the use of an eyewitness identification expert. *See Horton v. Richard*, 2013 WL 5492337, *19 (S.D. Ohio Oct. 1, 2013) (" 'No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment.' ") (Internal citation omitted). Our Sister Court found that trial counsel was not ineffective in choosing not to employ an eyewitness identification expert as trial counsel thoroughly cross-examined the victims on their identification of the defendant. *State v. Horton*, 2011-Ohio-1387, ¶ 20 (10th Dist.). Similar to *Horton*, trial counsel here also thoroughly cross-examined the victim and continued to argue about misidentification throughout the trial.

{¶33} Appellant stresses that Dr. Kovera explained at the post-conviction hearing that M.K.'s eventual identification of him was contaminated by M.K.'s observations of Appellant on the news and

that the identification was highly suggestive. Dr. Kovera relied on these conclusions when she claimed that an eyewitness expert's testimony could have impacted the outcome of the trial.

{¶34} In *State v. Knight*, **2024**-Ohio-2176 (7th Dist.), the appellant claimed the trial court improperly barred his expert (Dr. Kovera) from offering an opinion as to the specific reasons why she thought a victim's identification of the appellant as the shooter was mistaken. *Id.* at ¶ 39-40, 112. Relying on the Supreme Court of Ohio's decision in *State v. Buell*, 22 Ohio St.3d 124 (1986), this court stated, "Evid.R. 702 did not allow a psychological expert to opine about the credibility of a specific eyewitness' identification testimony unless the eyewitness had a physical or mental impairment that may affect that witness' ability to observe or recall events." *Id.* at ¶ 115. This court found the appellant's assignment of error on that issue lacked merit. *Id.* at ¶ 121.

{¶35} Here, Dr. Kovera claimed at the post-conviction hearing that the outcome of the trial could have been different if an eyewitness identification expert had testified. However, Dr. Kovera's testimony relied upon information that she could not convey to a jury. Thus, Dr. Kovera's testimony cannot lend support to an argument that trial counsel rendered ineffective assistance by not calling her, or another expert, at the jury trial.

{¶36} Similarly, Attorney Koblentz claimed at the post-conviction hearing that an eyewitness identification expert should have been brought in to tell the jury that M.K.'s identification was not reliable. Like Dr. Kovera, Attorney Koblentz improperly believed that an expert could testify that M.K.'s identification was not reliable. *Knight* at ¶ 115; ***State*** *v. Patterson*, 2015-Ohio-873, ¶ 61 ("It is the factfinder, not an expert, who is properly charged with assessing the credibility or 'trustworthiness' of a witness.")

{¶37} The references by the Supreme Court of Ohio in *Bunch*, 2022-Ohio-4723, to *Hinton v. Alabama*, 571 U.S. 263 (2014) and ***State*** *v. Herring*, 2014-Ohio-5228, are only relevant to its finding that an evidentiary hearing was warranted.

{¶38} In *Hinton*, the United **States** Supreme Court held that "[u]nder that [*Strickland*] standard, it was unreasonable for Hinton's lawyer to fail to seek additional funds to hire an expert where that failure was based not on any strategic choice but on a mistaken belief that available funding was capped at $1,000." *Hinton*, 571 U.S. at 273. Unlike *Hinton*, DiMartino made it clear that he was aware that funds were available and that he could request additional

funds if he saw fit. However, DiMartino made a strategic choice not to employ an eyewitness identification expert in this case.

{¶39} In *Herring*, the defendant was part of a group of six that robbed an inn during which they shot five people, three of whom died. *Herring*, 2014-Ohio-5228, at ¶ 3. The defendant was convicted of three counts of complicity to commit aggravated murder, among other crimes, and was sentenced to death. *Id.* at ¶ 11. Subsequent post-conviction proceedings focused on the effectiveness of counsel during mitigation. *Id.* at ¶ 19. The defense's mitigation investigator revealed he did not have enough time to thoroughly investigate the case, did not know if defense counsel had the defendant examined by a psychologist, and in summary, that he had done a "substandard job of mitigation investigation." *Id.* at ¶ 36-38. On review by the Supreme Court of Ohio, it was determined that defense counsel assigned to represent capital defendants have a responsibility to ensure a thorough mitigation investigation was completed. *Id.* at ¶ 111. The Supreme Court concluded that due to the statements of the mitigation investigator and the evidence presented, trial counsel was ineffective. *Id.* at ¶ 111, 135. Thus, *Herring* did not and could not involve a strategic choice. Unlike *Herring*, DiMartino in the case at bar made a strategic choice after contemplating the use of an eyewitness identification expert.

{¶40} Appellant also stresses that he was excluded as the source of DNA in the rape kit. However, "physical evidence is not required to support a rape conviction against a manifest weight challenge." ***State*** *v. Thomas*, 2015-Ohio-5247, ¶ 31 (9th Dist.). Notwithstanding the DNA exclusion, the lack of eyewitness identification expert testimony, and the fact that M.K.'s identification of Appellant was delayed, the record establishes evidence of Appellant's guilt, as addressed, including: on August 21, 2001, around 10:20 p.m., M.K. arrived at work and noticed an older black automobile driving up the street and stopping a few houses away; she saw a tall masked man running through the grass (later identified as Brandon Moore); Moore pointed a gun at her and instructed her to give him all her money and belongings; Moore instructed M.K. to get into her vehicle; Moore climbed into her car and drove away with her inside; shortly thereafter, Moore stopped the car and a second gunman (later identified as Appellant) exited the black vehicle and entered M.K.'s car; Appellant put a gun to M.K.'s head and demanded her money and belongings; Moore gave M.K.'s jewelry, including her earrings, to Appellant; both vehicles drove down a dead-end street and stopped; Appellant ordered M.K. out of the car and Moore and Appellant took turns orally, vaginally, and anally raping her; at some point, Andre Bundy (the driver of the other vehicle) told Jamar

Callier (the passenger) to stop them; Callier then pushed Appellant off M.K., helped her to her feet, and put her in her vehicle; this caused an altercation between Appellant and Callier; prior to letting M.K. leave, Moore and Appellant threatened M.K. to not tell anyone what happened; M.K. drove straight to her boyfriend's parents' house where she screamed out the license plate number of the suspects' car; M.K.'s boyfriend's parents immediately took her to the hospital; Officer Lynch received information that M.K. had been raped by men in an older black vehicle with license plate No. "CTJ 6423"; M.K. gave a detailed description of the suspects and Officer Lynch broadcasted the information over the police radio; Officer Vitullo was on patrol and noticed a similar black vehicle/license plate number at Dairy Mart; Dairy Mart surveillance video captured Appellant and Callier inside the gas station; at trial, M.K. identified Appellant from the Dairy Mart video surveillance photographs; M.K. said Appellant was wearing her diamond earring; Officer Vitullo followed the car; the vehicle ran a stop signed and pulled in a driveway; the driver (Appellant) fled on foot while Moore, Bundy, and Callier were apprehended; before fleeing, Appellant told the men that he is not going back to jail and for them to tell the police his name is "Shorty Mack"; Callier verified that Appellant is "Shorty Mack"; Detective Shuster later learned that "Shorty Mack" is Appellant; Appellant was encountered by the police five minutes later and less than a half mile away; M.K.'s belongings and Appellant's .38 caliber handgun were found in the suspects' vehicle; three days later, Officer Jones was informed that the name of the rape suspect that fled was Appellant (Chaz Bunch), the individual he encountered outside of a home on Glenwood Avenue on the night of the rape; around this time, police stopped a vehicle in which they suspected Appellant was a passenger in the hopes of arresting him for these crimes; all four occupants, including Appellant, were wearing red bandanas; when stopped, Appellant told police his name was "Eric Coffer"; due to Appellant's past criminal record, another officer recognized Appellant and arrested him; Callier admitted his involvement and testified at trial that both Moore and Appellant raped M.K.; M.K. accurately identified Moore, Bundy, and Callier; M.K. identified Appellant on multiple occasions, each time giving a consistent identification, since 2001; from the beginning, M.K. identified Appellant as one of the perpetrators that raped, robbed, and kidnapped her; M.K. described Appellant as shorter than her, heavier, darker skinned, chubby cheeks, cold looking eyes; M.K. also identified the .38 Smith & Wesson that Appellant had on his person that evening; M.K. was shown several photographic line-ups; she was drawn to No. 5 because of the cold looking eyes and the cheeks but requested a body shot; M.K. subsequently observed Appellant's photograph in a news article and immediately knew it

> was one of the men that raped her; M.K. said she could never forget a body that was on top of her and looking at her in the eyes while raping her; M.K. gave a consistent account of the events and of her identification of Appellant at the probable cause hearing and at the suppression hearing; M.K. testified and identified Appellant in the courtroom at the jury trial; and at the re-sentencing hearing on September 6, 2019, about 18 years later, M.K. emphatically reiterated that Appellant raped, robbed, and kidnapped her.
>
> {¶41} DiMartino successfully convinced the jury to acquit Appellant of the aggravated robberies involving other victims, Cosa and Hammond, which took place right before the incident involving M.K. However, given the overwhelming evidence against Appellant regarding M.K., as addressed, any deficiency in trial counsel's performance does not allow for reversal on a claim of ineffective assistance of counsel. *See* ***State*** *v. Grate*, 2020-Ohio-5584, ¶ 137; ***State*** *v. Clinton*, 2017-Ohio-9423, ¶ 41.
>
> {¶42} Upon consideration, the trial court did not abuse its discretion in denying Appellant's petition for post-conviction relief following a hearing. The record establishes trial counsel's representation was constitutionally effective and Appellant did not suffer prejudice. Appellant fails to demonstrate ineffective assistance of counsel under *Strickland*.

*State v. Bunch, supra.* The Ohio Supreme Court declined to exercise appellate jurisdiction, *State v. Bunch,* 178 Ohio St. 3d 1410 (March 18, 2025), copy at State Court Record, ECF No. 8, Ex. 109. On March 10, 2026[2], Bunch filed his second habeas corpus petition in this Court raising one ground for relief:

> **Ground One**: Petitioner was denied the effective assistance of counsel at this trial by counsel's failure to retain and present expert testimony on eyewitness identification.
>
> **Supporting Facts:** On August 21, 2001, M. K. was kidnapped off the street, robbed, and repeatedly raped by four men. She subsequently easily identified three of the men in a photo array, but failed to identify Petitioner. Her boyfriend subsequently showed her a newspaper article that identified Petitioner as a suspect, and M. K. stated that she was certain that he was the fourth attacker. Petitioner's DNA was not found from samples collected from M.K.,

[2] Respondent concedes that Bunch's filing here was timely and raises no statute of limitations objection. Return, ECF No. 9, PageID 5093.

> the car, and any other items. The only other evidence against petitioner at trial was the testimony of one of his co-defendants, who faced a 76-year prison term but testified in return for a reduction of charges, an agreed seven-year prison term, and an agreement not to prosecute him for a robbery he committed before kidnapping M.K.
>
> Petitioner's original trial counsel requested funds for an expert on eyewitness identification, which was granted. That counsel withdrew, and the attorney who replaced him did not hire an expert.
>
> At the hearing on the petition for post-conviction relief, Petitioner presented the testimony of Dr. Margaret Bull Kovera, a social cognitive psychologist, who testified that M.K.'s identification of Petitioner was flawed because of her failure to initially identify him in the photo array, and issues of lighting, gun focus, and cross- racial identification, among others. Petitioner also presented the testimony of an attorney, Richard S. Koblentz, who opined that defense counsel's performance was deficient in not procuring an expert, and that Petitioner suffered prejudice as a result. Much of the testimony of the two witnesses was based on the fact that most of these issues could not be explored adequately on cross examination of M.K.
>
> This issue was raised in a direct appeal from the denial of the petition and in the appeal to the Ohio Supreme Court from the affirmance of the denial.

Petition, ECF No. 1, PageID 9-10.

As noted, Respondent concedes that this is not a second or successive petition and that it was timely filed. Respondent raises no procedural defenses and asserts the Seventh District's decision on the merits of the ineffective assistance of trial counsel claim is entitled to deference under *Strickland v. Washington,* 466 U.S. 668 (1984).

Petitioner responds by asserting that "the Ohio courts unreasonably applied *Strickland.*" (Traverse, ECF No.16, PageID 5115).

## Analysis

The governing standard for ineffective assistance of counsel claims is found in *Strickland*

*v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

To prevail on an ineffective assistance of counsel claim, a movant must establish that (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice, meaning that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Shimel v. Warren*, 838 F.3d 685, 696 (6th Cir. 2016).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

In a habeas corpus case such as this, the federal court is not considering the ineffective assistance of trial counsel claim *de novo*. Rather, we can grant relief only if the state court's application of Supreme Court precedent – in this case *Strickland v. Washington,* 466 U.S. 668 (1984) – was objectively unreasonable. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the

state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Cunningham v. Shoop,* 23 F.4th 636, 650 (6th Cir. 2022); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000); *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018).

As to the deficient performance prong of *Strickland*, the Seventh District held "[t]here exists no precedent that requires the use of an eyewitness identification expert." *State v. Bunch supra* at ¶ 32. The Seventh District cited for this proposition the Report of United States Magistrate Judge Mark Abel of this Court, later adopted by District Judge Michael Watson. *Horton v. Richard*, 2013 WL 5492337, *19 (S.D. Ohio Oct. 1, 2013), adopted at 2014 WL 580177 (S.D. Ohio Feb. 12, 2014).

Petitioner criticizes the Seventh District's reliance on *Horton*, distinguishing the facts of that case from this (Traverse, ECF No. 16, PageID 5129 *et seq*.). However, he cites no Supreme Court or Sixth Circuit precedent holding it is deficient performance to fail to present an expert witness on the factors which can undermine the reliability of eyewitness identification.

Petitioner sidetracks the discussion by arguing it was ineffective assistance of trial counsel to fail to consult with such an expert. However that is not the claim litigated in the state courts or pleaded in the Petition. The Seventh District's decision makes clear that it was counsel's considered tactical choice to rely on cross-examination to undermine M.K.'s identification rather than presenting an expert on eyewitness identification.

Note that had she been called as an expert, the potential witness presented in post-conviction, Dr. Margaret Bull Kovera, a social cognitive psychologist, would not have been permitted under Ohio evidence law to offer an opinion on the ultimate question of whether M.K.'s

identification was unreliable, but only on the psychological factors which affect reliability. *State v. Bunch, supra*, at ¶ 34, citing *State v. Buell*, 22 Ohio St.3d 124 (1986), interpreting Ohio R. Evid. 702.

The Traverse cites the testimony of Attorney Richard Koblentz at the evidentiary hearing that Attorney DiMartino's failure to consult with any eyewitness testimony expert was deficient performance (ECF No. 16, PageID 5123). But failure to consult is not the question litigated in the Ohio courts nor pleaded in the Petition. Rather the claim is that the failure to present the expert testimony was ineffective assistance of trial counsel.

The Seventh District's conclusion that reliance on cross-examination was a reasonable tactical choice under the circumstances is not an objectively unreasonable application of the deficient performance prong of *Strickland*.

Petitioner also argues that the Seventh District's decision is an objectively unreasonable application of the prejudice prong of *Strickland*. That prong requires finding that counsel's ineffective assistance probably adversely affected the outcome. To make that case, Petitioner argues "1. The court failed to consider the exculpatory evidence and 2. The court gave undue weight to the inculpatory evidence." (Traverse, ECF No. 16, PageID 5138-39).

The Traverse is devoid of any evidence of how effective expert eyewitness identification testimony is with juries. Social psychology has shown that eyewitness identification is not as reliable as most persons assume. See Elizabeth Loftus, Eyewitness Testimony (1987); Brandon Garrett, Convicting the Innocent (2012). But Petitioner presents no evidence or precedent showing that most jurors accept general scientific testimony on this subject and then acquit. Petitioner has not shown that presenting the general testimony Dr. Kovera could have given was likely to affect the outcome. The Seventh District's decision to the contrary is an objectively reasonable

application of the prejudice prong of *Strickland*.

Considered deferentially, the Seventh District's decision is an objectively reasonable application of both prongs of *Strickland*. The Petition should therefore be denied on the merits.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.

November 18, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.